Filed 4/25/25  P. v. Chavez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CESAR EDUARDO CHAVEZ,<br><br>    Defendant and Appellant. | F088473<br><br>(Super. Ct. No. F18906822)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Mark E. Cullers, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Franson, J. and Smith, J.

## INTRODUCTION

Appellant and defendant Cesar Eduardo Chavez (appellant) pleaded no contest to multiple offenses for sexually assaulting two women, identified as Jane Doe I and Jane Doe II. He was sentenced to 21 years in prison. On appeal, appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Appellant did not file a supplemental brief on his own behalf. We affirm.

## FACTS[1]

### Counts 1−4

Jane Doe I (born 1996) and appellant made contact with each other through social media in September 2018. A few days after the online contact, she met appellant in person, they spent time together, and she liked him.

On September 14, 2018, appellant drove to Jane Doe I's house and picked her up, because they planned to go to a movie. Jane Doe I sat in the front passenger seat. Appellant drove to his own house and said he left the movie tickets there. Appellant went into his house and then returned to the car.

Appellant drove to a location that was not near the movie theater, and parked next to some buildings. Jane Doe I said they were going to be late for the movie. Appellant replied they could go at a different time.

Appellant said he wanted to have sex with her and it would be quick. Jane Doe I refused. Appellant said it was going to be fast, moved over to the front passenger seat, and got on top of her. Jane Doe I kept saying no and tried to push him away. Appellant

---

[1]   The following facts are from the preliminary hearing, which the parties stipulated to as the factual basis for appellant's pleas. The two victims testified at that hearing.

stayed on top of her, removed his pants, and exposed his penis. Appellant used one hand to grab and control both her hands, and used his other hand to lower her pants.

Jane Doe I kept telling appellant to stop and tried to fight him off. Appellant put his fingers into her vagina, and then told Jane Doe I to masturbate him. Jane Doe I refused. Appellant grabbed one of her hands and told her to rub his penis. Jane Doe I refused and tried to resist, but he forced her hand to touch his penis.

Appellant moved back to the driver's seat. Jane Doe I raised her pants and said she wanted to go home. Appellant said they were still going to the movie because he "did not waste that money for nothing."

Jane Doe I said she was going to call someone to pick her up. Appellant took her cellphone out of her hands. Jane Doe I told him to give it back but he did not respond. She realized he was going to keep her cellphone, and she jumped out of the car while it was moving. Appellant turned the car around and stopped. He told her to get back in and he would give her the cellphone. Jane Doe I went back to the car and he returned the cellphone, and said they were still going to the movie.

Appellant parked at the movie theater and they went inside. Jane Doe I was scared and did not try to run away. She did not know how to ask someone for help without appellant finding out, and she was afraid he would hurt her. When they sat in the theater, she kept moving down the row of seats to get away from him, but he followed her down the row.

When the movie finished, they walked to his car and Jane Doe I again said she wanted to go home. Appellant said he wanted to go to some place and do it again. Appellant drove around, pulled into a dirt field, and parked behind a bush. There were no buildings or houses in the area.

Appellant jumped on top of her in the front passenger seat and tried to pull down her pants. Jane Doe I was able to open the front passenger door, and they both fell out of the car. Her cellphone remained in the car. Jane Doe I fell on her stomach and appellant

3.

was on top of her body. Jane Doe I grabbed a dirt rock and hit him in the head. Appellant got up, went back to his car, and told her to get back in because he had her cellphone.

Jane Doe I ignored him and walked away from his car. Appellant followed in his car and told her to get back inside. She kept walking toward a gas station and appellant drove away. The gas station was closed, and Jane Doe I ran to another store and asked someone to call the police.

**Counts 5−7**

Jane Doe II (born 1998) and appellant met on social media on September 30, 2018. Appellant said he was a cook at a restaurant, and he could help Jane Doe II get a job there. They agreed that he would drive her to that restaurant to find out about a job, and she gave her home address to him. Jane Doe II had never met or communicated with appellant prior to that day.

On October 1, 2018, appellant arrived at Jane Doe II's house. Jane Doe II got into his car and sat in the front passenger seat. Appellant drove to the restaurant where he said that he worked. Appellant told her to stay in the car and he would get the application papers. Jane Doe II thought that was odd but waited in the car. Appellant went into the restaurant and then returned to the car. Jane Doe II said she wanted to go home. Appellant said he wanted to get something to drink at a fastfood restaurant. She said that was okay, but he had to take her home afterwards.

Appellant drove to the fastfood restaurant and bought iced coffees for them. Appellant also drove to another restaurant, which was nearby. Jane Doe II again said she wanted to go home. Appellant drove to a dirt parking lot in "the middle of nowhere." Appellant parked there, and said he wanted to get to know her and listen to music that she liked. Jane Doe II said to take her home.

4.

Appellant drove out of the parking area and Jane Doe II thought he was taking her home. After driving for 10 to 15 minutes, appellant pulled into and parked in another dirt area that was also in "the middle of nowhere."

Jane Doe II demanded that appellant take her home. Appellant said he did not want to, and started touching her body. Appellant touched her and begged for a kiss. She refused. Appellant said he would take her home if she kissed him, so she gave him a kiss. Appellant left the driver's seat and got on top of her in the front passenger seat. He kept kissing her, put his hand between her inner thighs, and moved his hand toward her private area. Jane Doe II kept telling him to stop and take her home. Appellant said he wanted to have sex with her, and moved his hands under her shirt and across her breasts. Jane Doe II refused to have sex and told appellant that she was on her period. Appellant demanded proof and she had to lower her underwear, but appellant kept touching her.

Jane Doe II testified she pushed appellant off her body, opened the passenger door, and ran from the car. Appellant ran after her. Jane Doe II found a stick and threatened to hit him with it. Appellant said he would call the police and claim she had harmed him, and he made her feel like she was crazy or delusional. Appellant got back into his car and drove behind Jane Doe II as she ran down the road. Jane Doe II turned around and saw his car, and was afraid appellant was going to run her over. Jane Doe II ran into a field so appellant could not follow her. She fell into a hole and injured her leg. She saw appellant's car turn around and leave the area. Jane Doe II's cellphone was damaged when she fell down, but she was able to call 911 for help.

**PROCEDURAL BACKGROUND**

On August 31, 2023, an information was filed in the Superior Court of Fresno County charging appellant with committing the following offenses on Jane Doe I on or about September 14, 2018: count 1, sexual penetration by force (Pen. Code,[2] § 289,

---

[2] All further statutory citations are to the Penal Code unless otherwise indicated.

5.

subd. (a)(1)(A)), with aggravating circumstances pursuant to section 667.61, subdivisions (a) through (e), that the victim was kidnapped, the movement of the victim substantially increased the risk of harm, and there were multiple victims; count 2, kidnaping to commit rape (§ 209, subd. (b)(1)); count 3, attempted forcible rape (§§ 664/261, subd. (a)(2)); and count 4, second degree robbery (§ 211).

Appellant was charged with committing the following offenses on Jane Doe II on or about October 1, 2018:  count 5, kidnaping to commit rape (§ 209, subd. (b)(1)); count 6, sexual battery by restraint (§ 243.4, subd. (a)); and count 7, assault with intent to commit rape (§ 220, subd.(a)(1)).  As to all counts, aggravating circumstances were alleged pursuant to California Rules of Court, rule 4.421(a).

**Plea**

On June 11, 2024, appellant signed a change-of-plea agreement and pleaded no contest to count 1, sexual penetration by force; count 3, attempted forcible rape, and count 4, second degree robbery, committed against Jane Doe I; and count 6, sexual battery by restraint and count 7, assault with intent to commit rape, committed against Jane Doe II.  He admitted aggravating factors pursuant to section 667.6, subdivision (d) and California Rules of Court, rule 4.421, for a stipulated term of 21 years.[3]  The parties stipulated to a factual basis based on the preliminary hearing and police reports. Appellant waived his appellate rights.  The trial court granted the People's motion to dismiss the remaining charges.

---

[3]     The information alleged aggravating factors pursuant to section 667.61, subdivisions (a) through (e), which provides for imposition of either 15 years to life or 25 years to life, upon conviction of enumerated sex offenses committed under certain circumstances.

At the plea hearing, appellant admitted an amended allegation pursuant to section 667.6, subdivision (d), which provides for imposition of full, separate, and consecutive sentences if the crimes involve separate victims, upon conviction of sexual offenses enumerated in subdivision 667.6, subdivision (e).

6.

**Sentencing Hearing**

On July 11, 2024, the trial court convened the sentencing hearing. Appellant moved to withdraw his plea and the court conducted a confidential hearing. The court denied his motion and proceeded with sentencing.

The trial court sentenced appellant to an aggregate term of 21 years based on the upper term of eight years for count 1; a separate and consecutive upper term of six years for count 7, pursuant to section 667.6, subdivision (d); a separate and consecutive upper term of five years for count 4; a consecutive term of one year (one-third the midterm) for count 6; and a consecutive term of one year (one-third the midterm) for count 3.

Appellant was ordered to register as a sex offender, and the trial court served him with a criminal protective order prohibiting contact with both victims for 10 years.

On August 12, 2024, appellant filed a timely notice of appeal, and the trial court granted his request for a certificate of probable cause based on the court's denial of his motion to withdraw the pleas.[4]

## DISCUSSION

As noted above, appellate counsel filed a *Wende* brief with this court. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. On January 28, 2025, this court advised appellant by letter that he could file a supplemental letter or brief raising any arguable issues. Appellant did not do so.

After independent review of the record, we find no reasonably arguable factual or legal issues exist.

---

[4] While appellant waived his appellate rights, this court may consider his appeal because he obtained a certificate of probable cause. (See, e.g., *People v. Espinoza* (2018) 22 Cal.App.5th 794, 797, 803; *People v. Becerra* (2019) 32 Cal.App.5th 178, 188; *People v. Orozco* (2010) 180 Cal.App.4th 1279, 1285.)

## **DISPOSITION**

The judgment is affirmed.